## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| NATHANIEL DANTE RICE, | : | Case No. 1:22-cv-695 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Matthew W. McFarland |
| | : | Magistrate Judge Karen L. Litkovitz |
| SHERIFF RICHARD K. JONES, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff is an inmate currently at the Greensboro County Jail in Greensboro, North Carolina and a former pretrial detainee at the Butler County Jail (Jail) in Hamilton, Ohio.  He brings this *pro se* civil rights action against twenty-four defendants regarding the conditions of his confinement at the Jail and the alleged treatment he received at a hospital in Middletown, Ohio.  (Doc. 1-1).  The Court understands the action to be brought under 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (ADA), and/or Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (Rehabilitation Act).[1]  By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

---

[1] "Section 1983 provides a private cause of action for the deprivation, under color of state law, of 'rights . . . secured by the Constitution and laws.'"   *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 624 (1979) (Powell, J., concurring).   Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.   The Rehabilitation Act provides that:   "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"   29 U.S.C. § 794.   Claims asserted under the Rehabilitation Act are analyzed similarly to claims asserted under the ADA.   *See Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011); *McPherson v. Mich. High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir. 1997) (en banc).   *See also Anderson v. Cty. of Siskiyou,* No. C 10-01428 SBA, 2010 WL 3619821, at *4 (N.D. Cal. Sept. 13, 2010) ("Title II of the ADA and the Rehabilitation Act apply to inmates in prison and pretrial detainees held in county jail.").

Many of the allegations in plaintiff's complaint were previously set forth in another action filed by plaintiff in this Court in Case No. 1:21-cv-611. In a Report and Recommendation in that case, which the District Judge adopted, the Magistrate Judge recommended that plaintiff's claims regarding his July 2021 arrest be dismissed with prejudice for failure to state a claim upon which relief could be granted and that the remaining claims be severed and dismissed without prejudice under Fed. R. Civ. P. 20(a)(2) and 21 because they were improperly joined to the arrest claim. *See Rice v. Jones, et al.*, No. 1:21-cv-611 (S.D. Ohio) (Doc. 12). Following the issuance of that Report and Recommendation, plaintiff filed the instant action, reasserting claims from the earlier lawsuit concerning the alleged conditions at the Jail and his alleged treatment at the Middletown, Ohio, hospital.[2]

This matter is now before the Court for a s*ua sponte* review of the complaint in the instant case to determine whether the complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).[3]

---

[2]Plaintiff has filed a notice of appeal in Case No. 1:21-cv-611, which remains pending. *See Rice v. Jones, et al.*, No. 1:22-cv-611 (S.D. Ohio) (Doc. 18).

[3]Plaintiff's complaint consists of a form complaint, a handwritten attachment, and a separate document titled "Affidavit." (*See* Docs. 1-1; 1-2). The Affidavit, however, is not sworn before a notary and fails to satisfy the statutory requirements for an unsworn declaration under 28 U.S.C. § 1746 as it is not dated. *Cf. Lauderdale v. Wells Fargo Home Mort'g,* 552 F. App'x 566, 571 (6th Cir. 2014) ("[U]nsworn declarations cannot be considered as evidence for summary judgment unless made under penalty of perjury, certified as true and correct, dated, and signed."). The Court therefore considers the Affidavit solely as additional allegations in support of plaintiff's complaint.

2

## Screening of Complaint

### A.     Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious.  *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).   A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).   An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke,* 490 U.S. at 327.   An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199.   The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94

(2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).   By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).   The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation."   *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).   A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555.   Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."   *Id.* at 557.   The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   *Erickson*, 551 U.S. at 93 (citations omitted).

### B.    Plaintiff's Allegations

#### Booking (July 29, 2021 to August 8, 2021)

Plaintiff alleges that he arrived at the Jail on July 29, 2021, in a restraint chair. According to plaintiff, he begged to be released from the chair to use the bathroom, but

4

defendant Officer Claudill told him to "shut the fuck up," and plaintiff urinated on himself.

Plaintiff next alleges that sometime between July 29, 2021, and August 8, 2021, he was given a food tray that made his throat tighten and caused him to vomit. Plaintiff alleges that when he pushed the tray out of his cell Claudill came over and kicked his hand, fracturing his hand and thumb. Plaintiff asserts that he begged for a medical assessment and Nurse Jane Doe # 1, who is not named as a defendant, began providing medical care until defendant Sgt. Rowe whispered something in her ear and she stopped. Rowe then told plaintiff to get back in his cell. Plaintiff alleges that his thumb was very swollen.

Plaintiff claims that he informed "all medical staff, supervisory officials, unit officers and/or staff members" that he needed medical assistance for his thumb as well as for the following chronic conditions: "back injuries/spasms, torn ligaments in knees/ankles, deformed ankle/feet disorder, carpel tunnel, anemia, silent carrier of alpha thalassemia trait, shoulder injuries and mental health injuries including PTSD, anxiety, bipolar & depression." Plaintiff also alleges that he informed "all staff" that he needed "a wheelchair and/or medical accommodation for [his] kosher tray" because he cannot digest any meat except fish. More specifically, plaintiff alleges that he told the following defendants he needed a wheelchair, medical and religious food accommodations, and "proper" medications: "Med. Tech. Jane Doe # 1, Med. Tech. Jane Doe # 2, Med. Tech. John Doe # 1, Med. Tech. Rickie, Med. Supervisor Jane Doe #4, Medical Supervisor Brian Rule, Sgt. Rump, Sgt. Burkett, Sgt. Rowe, Sgt. Young, Lt. Adams, [and] Captain Nick Fisher." According to plaintiff, he was denied "everything" he needed until the last week he was at the Jail, when he was given some pain pills and mental health medication. (Doc. 1-1, at PageID 20-22). Plaintiff also alleges that he told "all medical

staff and/or staff" that the Interactive Resource Center in Greensboro, North Carolina, had a list of all the medications and medical accommodations that he needed.   (*Id*. at PageID 23).

### H-Pod (August 8, 2021 to August 16, 2021)

Plaintiff alleges that on August 8, 2021, he was moved to H-Pod.   Plaintiff alleges that he was denied the use of a wheelchair in H-Pod and denied showers for six days until August 14, 2021.   Plaintiff alleges that on August 12, 2021, defendant Officers Weaver and Branson were working together.   Although not entirely clear, plaintiff appears to allege that Weaver yelled, "White Power," and assaulted plaintiff by throwing a food tray at him.   Plaintiff alleges that Weaver laughed and told Branson that she always had problems with Muslims but knew how to put them in their place.   Plaintiff further alleges that he asked for Weaver to be charged with a hate crime based on her comments and actions and for him to be kept separated from Weaver.

Plaintiff alleges that on August 14, 2021, he was allowed to shower but had to drag himself to the shower because "unit officers, medical staff, and/or supervisory officials" refused to provide him with a wheelchair, medications, and other medical accommodations that he needed.   Plaintiff alleges that he filed numerous sick call requests and grievances, but "medical staff" continued to deny him proper medical care, including a wheelchair.   (Doc. 1-1, at PageID 22-24).

### F-Pod (August 16, 2021 to September 23, 2021)

Plaintiff alleges that on August 16, 2021, defendant Sgt. Young moved him to F-Pod, using a wheelchair.   Plaintiff claims that Branson was working in F-Pod at the time.   Plaintiff alleges that Branson moved some inmates out of Cell 15 and told plaintiff to go into the cell. Plaintiff alleges that, as he attempted to move his legs, Branson yelled at him and started pushing

the wheelchair recklessly fast toward the cell.   Plaintiff claims that there were no footrests on the wheelchair, causing him to drag his feet, which hurt his feet, ankles, and back.   Plaintiff alleges that defendant Sgt. Rowe observed Branson recklessly pushing plaintiff and laughed, even though plaintiff asked him to intervene to stop Branson.

Plaintiff claims that when they arrived in front of Cell 15, he requested a mattress and cleaning supplies.   Plaintiff alleges that Branson told him to get out of the wheelchair, grabbed him, and then slammed him onto the concrete floor, injuring his shoulder, wrist, and back. Plaintiff alleges that Rowe observed Branson but failed to intervene.   Plaintiff further alleges, without additional detail, that he was denied a medical assessment.

Plaintiff claims that the cell was dirty and did not have a mattress, but Branson refused to give him either cleaning supplies or a mattress.   Plaintiff claims that when Young returned to the Pod, he told Young that Branson had slammed him to the floor and asked Young for cleaning supplies and a mattress.   Young allegedly refused to bring plaintiff cleaning supplies or a mattress.   Plaintiff asserts that Rowe did bring him a mattress but no cleaning supplies. Plaintiff claims that as a result of being denied cleaning supplies he developed a skin infection a few days after being brought to Cell 15.

Plaintiff further claims that he filed grievances about Branson's alleged excessive force and asked Young and Rowe to keep him separated from Branson.   Plaintiff alleges that he also told Young and Rowe that he wanted to press charges against Branson and asked them to preserve video footage of the alleged excessive force but they refused in order to cover it up.

Although not entirely clear, plaintiff also alleges that he reported defendant Officer Ponder for threatening him and for not sending out his legal mail on August 21 and 22, 2021.

Plaintiff claims that Ponder wrote him a disciplinary report, but never gave him a copy of the report. Plaintiff claims that defendant Disciplinary Officer John Doe # 4 found him guilty of the violation and sanctioned plaintiff to "Warden Burgers," even though his religious beliefs required him to eat only kosher meals. According to plaintiff, there was a policy at the Jail that allowed Muslims who were found guilty of disciplinary sanctions to be given Warden Burgers instead of kosher food.

Plaintiff alleges that on September 15, 2021, he was attacked by defendant Officers Doyle, Pollard, and Branson. Plaintiff claims that when these defendants opened his cell for recreation, he requested a wheelchair to take a shower or for a supervisor to be called. Plaintiff alleges that in response to his request the three defendants hit him in the head, choked him, bent his thumb backwards, and sprayed him with pepper spray. Plaintiff alleges that after these defendants attacked him, defendants Rowe and Young brought him a wheelchair, took him to booking to wash and change his clothes, and then returned him to F-Pod. Plaintiff alleges that defendant Med. Tech. Rickie refused to give plaintiff pain pills even though his head and thumb were swollen. Plaintiff alleges that he was not given any pain medication until September 16 or 17, when Med. Tech Healy, who is not named as a defendant, properly examined plaintiff, prescribed pain pills, and gave him ice for swelling.

Plaintiff claims that between September 15 and September 23, 2021, he received medication for schizophrenia and some pain pills but was denied adequate medical care for all of his "medical/mental injuries." (Doc. 1-1, at PageID 24-31). Plaintiff also alleges that since he was sprayed with pepper spray on September 15, 2021, his eyesight has been blurry. (Doc. 1-2, at PageID 39).

***Toothbrush and Letters***

Plaintiff alleges that Jail staff refused to provide him a toothbrush based on a policy or custom that forbids Jail inmates to have these items. Plaintiff states that he developed a cavity in a back tooth. (Doc. 1-1, at PageID 27; Doc. 1-2, at PageID 39).

Plaintiff also alleges that he wrote a letter to defendant Sheriff Richard K. Jones about the alleged conditions at the Butler County Jail and asked defendants Warden/Captain Fisher and Lt. Adams to preserve video footage of "all" incidents; keep him separated from Claudill, Weaver, and Branson; and to press charges against the staff who allegedly assaulted him and against Ponder for allegedly refusing to send out his legal mail and retaliating against him. (Doc. 1-1, at PageID 27-28).

***Middletown, Ohio, Hospital***

The remainder of plaintiff's allegations concern his alleged treatment at a Middletown, Ohio, hospital. (Doc. 1-1, at PageID 31-32).

For relief, plaintiff seeks damages. (Doc. 1-1, at PageID 19).

**C.     Analysis of the Complaint**

Based on the above allegations, plaintiff brings the following nine groups of claims: (1) all defendants conspired to retaliate against him for filing grievances by denying him medical care, cleaning supplies, a toothbrush, and a wheelchair, and by assaulting him; (2) defendant Claudill used excessive force against him by kicking and fracturing his hand and thumb while he was housed in booking; (3) defendants Branson, Doyle, and Pollard used excessive force against him and prevented him from filing a timely grievance on September 15, 2021; (4) defendant Branson used excessive force against him on August 16, 2021; (5) all defendants denied him

9

humane and sanitary living conditions and medical accommodations, and the supervisory

defendants also failed to protect him from staff members; (6) defendant Weaver used excessive

force against plaintiff on August 12, 2021; (7) he was denied kosher trays in violation of the First

Amendment; (8) "all contracted defendants at hospital" inflicted cruel and unusual punishment,

emotional distress, and pain and suffering, as well as damaged plaintiff's property; and (9)

defendants Ponder and Disciplinary Officer John Doe #4 violated plaintiff's rights to due process

in a disciplinary hearing resulting in the loss of kosher meals privileges.   (Doc. 1-1, at PageID

18).

At this stage in the proceedings, without the benefit of briefing by the parties to this

action, the undersigned concludes that plaintiff may proceed for further development at this

juncture with his:   (1) Fourteenth Amendment[4]  claims of excessive force against defendant

Claudill for allegedly kicking and injuring plaintiff's hand in booking, defendant Branson for

allegedly recklessly pushing plaintiff's wheelchair and slamming plaintiff down on August 16,

2021, and defendants Branson, Doyle and Pollard for allegedly attacking plaintiff on September

15, 2021; (2) Fourteenth Amendment claims for deliberate indifference to a serious medical need

against defendant Rowe for allegedly interfering with the provision of medical care to plaintiff's

hand and thumb in booking; (3) Fourteenth Amendment claim against defendant Rowe for

failing to intervene when defendant Branson allegedly recklessly pushed plaintiff's wheelchair

and slammed plaintiff down on August 16, 2021; (4) Fourteenth Amendment condition-of-

confinement claim against Branson, Young, and Rowe for allegedly failing to bring cleaning

---

[4]"The Fourteenth Amendment applies to conditions-of-confinement claims brought by pretrial detainees." *Bensfield v. Murray*, No. 4:21-cv-P104, 2022 WL 508902, at *2 (W.D. Ky. Feb. 18, 2022) (citing *Brawner v. Scott Cty.*, 14 F.4th 585, 591 (6th Cir. 2021)).

supplies to Cell 15 resulting in plaintiff developing a rash; and (5) ADA and Rehabilitation Act claims against Warden/Captain Nick Fisher in his official capacity based on the alleged denial of a wheelchair and an accommodation for a medical diet.   However, for the reasons below, the remainder of plaintiff's claims are subject to dismissal.

### *Defendants Sgt. Smith and Sgt. John Doe #2*

As an initial matter, the complaint does not contain any allegations against defendants Sgt. Smith or Sgt. John Doe # 2.   The complaint, therefore, fails to state a claim against these defendants.[5]

### *Supervisory Liability*

The complaint also fails to state a § 1983 claim against defendants Sheriff Jones, Warden/Captain Fisher, or Lt. Adams.   It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel.   *See, e.g., Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)).   "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate."   *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on a claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the

---

[5]Although plaintiff does include these two defendants in a listing of other supervisory defendants in his Affidavit, as set forth below, such generalized allegations are insufficient to meet § 1983's particularity requirement.

unconstitutional conduct of the offending officers").   Therefore, in the absence of any allegations that these defendants actually participated in the alleged unconstitutional actions, any claims against such defendants in their supervisory capacities are simply insufficient to give rise to an actionable § 1983 claim.   *See, e.g., Chappell v. Morgan*, No. 2:15cv1110, 2016 WL 738098, at *4-5 (S.D. Ohio Feb. 25, 2016) (Report & Recommendation) (holding that in the absence of any allegation that supervisory prison officials were involved in or encouraged an alleged assault by a correctional employee, the case could not proceed against them based on the theory that they failed to take corrective action after they were notified of the assault), *adopted*, 2016 WL 1109093 (S.D. Ohio Mar. 21, 2016).

### *Grievances and Investigations*

Plaintiff has also failed to state a claim to the extent that he alleges that defendants Branson, Doyle, and Pollard prevented him from filing a grievance on September 15, 2021. "Prison inmates do not have a constitutionally protected right to a grievance procedure."   *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998) (citations omitted); *see also Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003) (holding that the plaintiff failed to state a claim concerning the alleged interference with his ability to file grievances "because there is no inherent constitutional right to an effective prison grievance procedure").

Additionally, any claims by plaintiff against defendants for failing to preserve video footage or press charges also fail.   "There is no statutory or common law right, much less a constitutional right, to an investigation."   *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011). *Cf. Johnson v. Warden*, No. 3:21CV1514 (KAD), 2022 WL 344272, at *4 (D. Conn. Feb. 4,

2022) (dismissing plaintiff's claims that prison officials failed to respond to grievances and requests to preserve video footage).   To the extent that plaintiff is trying to allege a violation of his First Amendment right of access to the courts, he has failed to do so.   Plaintiff has not alleged that any failure to preserve video footage actually impeded him in an existing or contemplated non-frivolous legal proceeding, *Lewis v. Casey,* 518 U.S. 343, 351–53 (1996), or that a spoliation instruction would not provide him a remedy, *see, e.g., Jenkins v. Hutcheson*, No. 6:15-cv-50, 2015 WL 9480037, at *4 n.3 (S.D. Ga. Dec. 29, 2015).

### *Conspiracy*

To the extent that plaintiff alleges that defendants conspired to violate his rights, his conclusory allegations are insufficient to state a conspiracy claim.   *See Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016).   "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."   *Id.*   This claim is subject to dismissal.

### *Individual Capacity ADA and Rehabilitation Act Claims*

"The proper defendant under a Title II claim is the public entity or an official acting in his official capacity."   *Mitchell v. Horton*, No. 2:18-CV-216, 2019 WL 1025562, at *5 (W.D. Mich. Mar. 4, 2019) (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002)). Neither Title II of the ADA nor the Rehabilitation Act provide a private right of action against a public employee acting in his or her individual capacity.   *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("[N]either the ADA nor the [Rehabilitation Act] impose[s] liability upon individuals.").   Any individual

13

capacity claims under the ADA and the Rehabilitation Act should therefore be dismissed. Further, because plaintiff's ADA and Rehabilitation Act claims may proceed for further development at this juncture against Warden/Captain Fisher in his official capacity, the Court should dismiss any such claims against the remaining defendants in their official capacities as redundant. *Garcia v. Leavins*, No. 3:21CV514, 2021 WL 3476623, at *7 (N.D. Fla. June 25, 2021), *report and recommendation adopted*, 2021 WL 3472797 (N.D. Fla. Aug. 5, 2021) (citing cases).

### *Retaliation*

Plaintiff's retaliation claims are subject to dismissal.   A prisoner seeking to establish a First Amendment retaliation claim must show that (1) he was engaged in protected conduct; (2) the defendant took an adverse action that was capable of deterring a person of "ordinary firmness from continuing to engage in that conduct"; and (3) "the adverse action was motivated at least in part by the [prisoner's] protected conduct." *Hill v. Lappin,* 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter,* 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

Other than conclusory allegations of retaliation in his Affidavit (*see* Doc. 1-2, at PageID 35, alleging that plaintiff was denied medical care between July 29, 2021, and September 2021 "in retaliation for exercising [his] rights to free speech and redress grievances"), plaintiff's only defendant-specific allegations are that Ponder refused to send out plaintiff's legal mail and wrote him a disciplinary ticket in retaliation for filing grievances.   (Doc. 1-1, at PageID 28).   Plaintiff provides insufficient facts as to the timing of the grievances and alleged retaliatory conduct for the Court to infer that defendant Ponder was aware of or motivated by any protected conduct. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be

sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter,* 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1538–39 (6th Cir. 1987)). Without any "further factual enhancement," plaintiff's conclusory allegations are simply insufficient to state an actionable claim for relief. *Twombly,* 550 at 555–57. *See also Whiteside v. Collins,* No. Civ.A. 2:08-cv-875, 2009 WL 4281443, at *9 (S.D. Ohio Nov. 24, 2009) (finding the plaintiff's retaliation claim was subject to dismissal because "conclusory allegations of retaliatory motive and temporal proximity alone are insufficient to establish his retaliation claim") (Report and Recommendation), *adopted,* 2010 WL 1032424 (S.D. Ohio Mar. 17, 2010).

### *Free Exercise Claims*

Plaintiff's First Amendment free exercise claims are also subject to dismissal. "The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law . . . prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia, Penn.*, 141 S. Ct. 1868, 1876 (2021). "Prisoners retain the First Amendment right to the free exercise of their religion," *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)), and "must be provided 'reasonable opportunities' to exercise their religious freedom guaranteed under the First Amendment." *Hudson v. Palmer,* 468 U.S. 517, 523 (1984) (quoting *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam)). "A prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (internal quotation marks and citation omitted). Though prisoners retain a First Amendment right to the free exercise of their religion, "the circumstances of prison life may

require some restrictions on prisoners' exercise of their religious beliefs, requiring a court to balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the state's legitimate interests in operating its prisons." *Hayes*, 424 F. App'x at 549 (internal quotation marks and citation omitted). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiff alleges that "all" of the defendants violated his First Amendment right to have a kosher tray in Jail. However, "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that *each* Defendant is liable for [the alleged constitutional violation]." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.") (in turn quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

Even considering plaintiff's allegation that he told "Med. Tech. Jane Doe # 1, Med. Tech. Jane Doe # 2, Med. Tech. John Doe # 1, Med. Tech. Rickie, Med. Supervisor Jane Doe #4, Medical Supervisor Brian Rule, Sgt. Rump, Sgt. Burkett, Sgt. Rowe, Sgt. Young, Lt. Adams, [and] Captain Nick Fisher" of his need for a kosher diet, plaintiff simply does not allege which, if any, of these defendants was responsible for the alleged denial of his request. Plaintiff has therefore failed to state a First Amendment claim against these defendants. *See Boxill*, 935 F.3d at 518; *see also Iqbal,* 556 U.S. at 678.

16

Further, to the extent that plaintiff alleges that Disciplinary Officer John Doe #4 imposed a disciplinary sanction that removed plaintiff's kosher food privileges and limited him, per a Jail policy, to "Warden Burgers," plaintiff does not allege the length of time he was allegedly sanctioned to "Warden Burgers" or any facts describing what that entailed.   Nor has plaintiff described, other than through conclusory assertions, the purported Jail policy requiring "Warden Burgers" for disciplined prisoners.   "Merely positing a theory of legal liability that is unsupported by specific factual allegations does not state a claim for relief[.]"   *Young v. Hodge*, No. 3:12-0009, 2012 WL 5494892, at *6 (M.D. Tenn. Nov. 13, 2012), *report and recommendation adopted,* No. 3:12-CV-0009, 2013 WL 440964 (M.D. Tenn. Feb. 5, 2013) (citing *Iqbal,* 556 U.S. at 678–79).   *See also Lewis v. Zon*, 920 F. Supp. 2d 379, 385 (W.D.N.Y. 2013) ("It is well settled that periodic or temporary denial of religious meals does not constitute 'substantial' interference with free exercise, and is insufficient to establish a First Amendment claim."); *Taylor v. Canton Ohio Police Dep't.,* 544 F. Supp. 783, 788 (N.D. Ohio 1982) (finding that a plaintiff must set forth facts showing the existence of an offending custom or policy and mere conclusory allegations are insufficient).

### Remaining Fourteenth Amendment Claims

#### Deliberate-Medical-Indifference Claims

Historically, the Sixth Circuit analyzed Fourteenth Amendment claims for conditions of confinement, deliberate indifference to serious medical needs, excessive force, and failure to protect brought by pretrial detainees under the same Eighth Amendment framework applied to convicted prisoners.   *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018).   This constitutional framework includes both objective and subjective components.   *Id*. at 937-38.   The objective

17

component requires an inmate to show he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component requires an inmate to show prison officials (1) were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (2) actually drew the inference; and (3) consciously disregarded the risk. *Id.* at 837, 839.

This framework changed with the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). In *Kingsley*, the Supreme Court recognized the different constitutional status between a convicted prisoner and an individual detained in jail prior to trial. *Id.* at 400. The Supreme Court held that Fourteenth Amendment excessive use of force claims brought by pretrial detainees require only an objective showing. A pretrial detainee must show "only that the officers' use of force was *objectively* unreasonable" and need not "show that the officers were *subjectively* aware that their use of force was unreasonable." *Id.* at 391-92.

Subsequently, in *Brawner v. Scott Cty., Tenn.*, 14 F.4th 585, 591 (6th Cir. 2021), the Sixth Circuit determined that *Kingsley*'s reasoning required modification of the subjective prong of a Fourteenth Amendment deliberate indifference claim. 14 F.4th at 592, 596. The *Brawner* court held that a pretrial detainee must show "more than negligence but less than subjective intent—something akin to reckless disregard." *Brawner*, 14 F.4th at 596-97 (quoting *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). "A defendant must have not only acted deliberately (not accidentally), but also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 596 (quoting *Farmer*, 511 U.S. at 836).

18

Shortly after *Brawner*, in *Trozzi v. Lake County, Ohio*, the Sixth Circuit distilled a three-part test for inadequate medical care claims under the Fourteenth Amendment:

> (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's medical needs subjected the detainee to an excessive risk of harm; and (3) the prison official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk.

29 F.4th 745, 757-58 (6th Cir. 2022).    The court in *Trozzi* reasoned that *Brawner*, while modifying the subjective prong, retained "consideration of an official's actual knowledge of the relevant circumstances."   *Id.* at 755.   An officer's subjective knowledge may be "infer[red] from circumstantial evidence . . . ."   *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

With the exception of plaintiff's Fourteenth Amendment deliberate-medical-indifference claim against defendant Rowe, which the Court allows to proceed at this juncture, plaintiff's remaining allegations against the other defendants are insufficient to state a claim for deliberate indifference to his medical needs.   For instance, plaintiff merely alleges that "all" staff and/or "Med. Tech. Jane Doe # 1, Med. Tech. Jane Doe # 2, Med. Tech. John Doe # 1, Med. Tech. Rickie, Med. Supervisor Jane Doe #4, Medical Supervisor Brian Rule, Sgt. Rump, Sgt. Burkett, Sgt. Rowe, Sgt. Young, Lt. Adams, [and] Captain Nick Fisher" denied him medical care, or he simply concludes that he was denied medical treatment.   As set forth above, the grouping together of a large number of defendants leaves the Court to speculate as to what each defendant may or may not have done to violate plaintiff's rights.   Plaintiff's generalized and conclusory allegations are insufficient to state a § 1983 claim for deliberate indifference to medical needs. *See Boxill*, 935 F.3d at 518; *Iqbal,* 556 U.S. at 678.

Nor has plaintiff pleaded a plausible deliberate indifference claim against Med. Tech. Rickie for allegedly failing to provide plaintiff with pain pills on September 15, 2021.   Plaintiff asserts that after the alleged excessive force incident on September 15, 2021, he was taken to booking, where he washed and changed his clothes.   Plaintiff states that Rickie refused to give him pain pills even though his head and thumb were swollen.   But plaintiff does not allege that Rickie ignored him or otherwise plead facts from which the Court can infer that Rickie actually knew of an unjustifiably high risk of failing to prescribe pain medication to plaintiff at that time. *See Trozzi*, 29 F.4th at 757-58.   Indeed, it appears from the allegations in the complaint that when plaintiff continued to have discomfort, he was given pain medication and ice for swelling on either September 16 or 17, 2021.   This claim should also be dismissed.

### Failure to Protect Claims

In the context of a pretrial detainee's failure to protect claim, "an officer violates the Fourteenth Amendment when (1) he acts intentionally 'with respect to the conditions under which the plaintiff was confined,' (2) those conditions 'put the plaintiff at substantial risk' of harm, (3) he does not take reasonable steps to abate that risk, and (4) by failing to do so he actually causes the plaintiff's injuries.   *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 945 (6th Cir. 2022) (quoting *Westmoreland v. Butler Cnty., Kentucky*, 29 F.4th 721, 729 (6th Cir. 2022)).

Plaintiff alleges that he asked defendants Young and Rowe to be kept separated from defendant Branson following Branson's August 16, 2021 alleged use of excessive force against plaintiff.[6]   Plaintiff alleges that one month later, on September 15, 2021, he was attacked by

---

[6]Plaintiff also attempts to bring this claim against defendants Sheriff Jones, Warden/Captain Fisher, and Lt. Adams.   However, because he does not allege personal involvement on their part, the claim is subject to dismissal.

defendants Doyle, Pollard, and Branson while in his cell. Plaintiff seeks to hold defendants Rowe and Young liable for failing to protect him from Branson's subsequent attack.

Plaintiff's complaint fails to allege a plausible claim of deliberate indifference to safety by Young and Rowe. As part of this claim, plaintiff must allege that Young and Rowe were "more than merely negligent," and that each officer "acted with 'reckless disregard' in the face of 'an unjustifiably high risk of harm.'" *Westmoreland*, 29 F.4th at 730 (quoting *Brawner*, 14 F.4th at 596). Plaintiff fails to allege any additional facts from which the Court could plausibly conclude that Young and Rowe's inaction was reckless, as opposed to merely negligent. Plaintiff has not sufficiently alleged facts suggesting that Young and Rowe acted intentionally to put him at a substantial risk of harm. *Id*. at 729. Nor can the Court plausibly conclude that based on plaintiff's single alleged request to keep him separated from Branson actually caused plaintiff's injuries one month later when he was allegedly attacked by Doyle, Pollard, and Branson.[7] *Id.* Plaintiff has failed to plead facts showing that the alleged September 15, 2021 incident occurred because of the actions of Young or Rowe.

### *Other Conditions of Confinement Claims*

In the context of a Fourteenth Amendment condition of confinement claim:

[T]he plaintiff must satisfy two requirements. First, the plaintiff "must show 'that [he or she] is incarcerated under conditions posing a substantial risk of serious harm.'" [*Bensfield v. Murray*, No. 4:21-cv-P104, 2022 WL 508902, at *2 (W.D.

---

*See, e.g., Chappell*, 2016 WL 738098, at *4-5. Plaintiff has also failed to state a plausible failure to protect claim relating to his alleged requests to be kept separated from defendants Claudill and Weaver. Aside from the fact that such claims appear to be alleged only against defendants Sheriff Jones, Warden/Captain Fisher, and Lt. Adams under an impermissible supervisory liability theory, *see id.*, it appears from plaintiff's allegations that he was in fact separated from these defendants. Plaintiff alleges that he was moved out of the units, *i.e.,* boking and H-Pod, where the incidents involving these defendants occurred.

[7]In so far as plaintiff asserts in his Affidavit that Branson conspired against him with the other three officers involved in the September 15, 2021 incident (*see* Doc. 1-2, at PageID 38), the Court has already noted that plaintiff's conclusory allegations are insufficient to establish a plausible conspiracy claim. *See Bickerstaff*, 830 F.3d at 400. In any event, plaintiff has not alleged that defendants Young or Rowe were aware of the alleged conspiracy.

Ky. Feb. 18, 2022)] (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)); *see also Westmoreland v. Butler Cty.*, 29 F.4th 721, 728 (6th Cir. 2022). Second, the "plaintiff must show that [the Defendant] acted 'deliberately' and 'recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Brawner*, 14 F.4th at 596).

*Assi v. Hanshaw*, __ F. Supp.3d __, No. 1:20-CV-839, 2022 WL 4069194, at *14 (S.D. Ohio Sept. 2, 2022).

Plaintiff's allegation that defendant Caudill refused to let him use the bathroom on an isolated occasion fails to satisfy the first element of a Fourteenth Amendment condition of confinement claim, *i.e.*, that plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." *Assi*, 2022 WL 4069194, at *14 (internal quotations omitted). *See, e.g., Partee v. Cain,* No. 92 C 4838, 1999 WL 965416, at *8 (N.D. Ill. Sept. 30, 1999) ("Not being allowed to use bathroom facilities when he needed to and subsequently urinating on himself was undoubtedly unpleasant and humiliating. However, this appears to be nothing more than a temporary inconvenience, which is not a violation of a constitutional right.") (citing *Johnson v. Pelker,* 891 F.2d 136, 138-39 (7th Cir.1989)); *see also Mack v. Chandler*, No. 16 C 50036, 2016 WL 2866146, at *3 (N.D. Ill. May 17, 2016) (finding that "a one-time denial of bathroom facilities" did not meet objective prong of similar Eighth Amendment standard). This claim is therefore subject to dismissal.

Additionally, to the extent that plaintiff alleges that defendants Weaver and Ponder used derogatory or threatening language toward him, such conduct, although unprofessional, also fails to show that plaintiff was incarcerated "under conditions posing a substantial risk of serious harm." *Assi,* 2022 WL 4069194, at *14 (internal quotations omitted). Courts have consistently held that "[v]erbal harassment or idle threats by a state actor do not create a constitutional

violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir. 1987)); *see also Chilcott v. Erie Cty. Domestic Relations,* 283 F. App'x 8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein).

Nor can the Court infer a Fourteenth Amendment violation from plaintiff's vague and conclusory allegation that defendant Weaver "threw" a food tray at him. Without additional context, these bare allegations are insufficient for the Court to plausibly infer there was a use of force. *See Assi,* 2022 WL 4069194, at *12 ("To state a cognizable excessive force claim, a plaintiff must allege—as a threshold matter—that a state actor's conduct constituted the use of force."). *Cf. Johnson v. Unknown Dellatifa,* 357 F.3d 539, 545–46 (6th Cir. 2004) (affirming dismissal of § 1983 complaint against a correctional officer for failure to state a claim in the related Eighth Amendment context even though the complaint contained allegations that the defendant threw the plaintiff's food trays so hard that the top of the tray would fly off).

Plaintiff's conclusory claim of a jail-wide policy to deny toothbrushes to inmates is also insufficient to state a claim upon which relief can be granted. Without additional facts as to the nature of the alleged policy, the Court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P 8(a)(2)).

Further, to the extent that plaintiff seeks to bring a Fourteenth Amendment claim against any of the defendants based on allegations that he was denied a shower in H-Pod between August 8 and August 14, 2021, the Sixth Circuit "has concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time' . . . is not actionable conduct." *Richmond*

23

*v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000)). "Plaintiff has not provided the Court with any facts that would allow it to determine whether the alleged deprivation was sufficiently protracted to state a claim." *Farmer v. Parker*, No. 2:21-CV-152, 2022 WL 456796, at *4 (E.D. Tenn. Feb. 14, 2022) (deprivation of a shower for a week did not violate the Constitution). This claim is subject to dismissal.

### Due Process Claims

Plaintiff has also failed to state a due process claim with respect to his alleged loss of kosher meal privileges following the disciplinary hearing. "To establish a procedural due process claim, a plaintiff must demonstrate: 1) a liberty or property interest protected by the due process clause; 2) a deprivation of that protected interest within the meaning of the due process clause; and 3) defendants' failure to afford adequate procedural rights prior to the deprivation." *Russell v. Wilkinson*, 79 F. App'x 175, 178 (6th Cir. 2003) (citing *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir. 1999)). "A prisoner does not have a constitutionally protected liberty interest in receiving kosher meals because discontinuation of a prisoner's participation in a kosher meal program is not an atypical or significant hardship in relation to the ordinary incidents of prison life." *Davismoore v. Davis*, No. 1:18CV1468, 2019 WL 1558679, at *4 (N.D. Ohio Apr. 10, 2019) (citing cases). Plaintiff's due process claim is therefore subject to dismissal.

### Middletown, Ohio, Hospital

Finally, the remainder of plaintiff's complaint involves claims that arise out of separate incidents and involve different defendants and issues at a Middletown, Ohio hospital. A plaintiff may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of

24

law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). *See also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

"[T]he proper remedy for . . . misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice." *Cage v. Mich.*, No. 16cv11679, 2018 WL 3729062, at *2 (E.D. Mich. Aug. 6, 2018). Under Fed. R. Civ. P. 21, courts have "broad discretion 'to order severance to avoid causing unreasonable prejudice and expense to the defendant . . . and to avoid great inconvenience in the administration of justice.'" *Proctor v. Applegate*, 661 F. Supp. 2d 743, 781 (E.D. Mich. 2009) (quoting *Nali v. Mich. Dep't of Corrections*, No. 07-10831, 2007 WL 4465247, *3 (E.D. Mich. 2007)) (alteration in original).

Accordingly, in sum, the undersigned **RECOMMENDS** that the Court **DISMISS with prejudice** plaintiff's complaint as it pertains to his time in the Butler County Jail, with the exception of his: (1) Fourteenth Amendment claims of excessive force against defendant Claudill for allegedly kicking and injuring plaintiff's hand in booking, defendant Branson for allegedly recklessly pushing plaintiff's wheelchair and slamming plaintiff down on August 16, 2021, and defendants Branson, Doyle and Pollard for allegedly attacking plaintiff on September 15, 2021; (2) Fourteenth Amendment claims for deliberate indifference to a serious medical need against defendant Rowe for allegedly interfering with the provision of medical care to plaintiff's hand and thumb in booking; (3) Fourteenth Amendment claim against defendant Rowe for failing to

intervene when defendant Branson allegedly recklessly pushed plaintiff's wheelchair and slammed plaintiff down on August 16, 2021; (4) Fourteenth Amendment conditions of confinement claim against Branson, Young, and Rowe for allegedly failing to bring cleaning supplies to Cell 15 resulting in plaintiff developing a rash; and (5) ADA and Rehabilitation Act claims against Warden/Captain Nick Fisher in his official capacity based on the alleged denial of a wheelchair and an accommodation for a medical diet. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b).

However, plaintiff has failed to provide service copies of the complaint or completed U.S. Marshal forms for service of process.[8] It is therefore **ORDERED** that plaintiff, **within thirty (30) days** of the date of this Order and Report and Recommendation, submit a service copy of the complaint and a completed United States Marshal form for each of defendants Claudill, Branson, Doyle, Pollard, Young, Rowe, and Warden/Captain Fisher. Plaintiff is advised that failure to comply with this Order may result in the dismissal of this action for want of prosecution.

In addition, the undersigned concludes that plaintiff's remaining claims relating to his alleged treatment at the hospital in Middletown, Ohio, are improperly joined in this action and should be **DISMISSED without prejudice** to plaintiff re-filing a separate action or actions including such claims if he so wishes. Fed. R. Civ. P. 20(a)(2); 21.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Court **DISMISS with prejudice** plaintiff's complaint as it pertains to his time in the Butler County Jail, with the exception of his (1) Fourteenth Amendment claims of excessive force against defendant Claudill for allegedly kicking and injuring plaintiff's hand in booking,

---

[8]Plaintiff has provided completed summons forms for these defendants and need not resubmit those.

defendant Branson for allegedly recklessly pushing plaintiff's wheelchair and slamming plaintiff

down on August 16, 2021, and defendants Branson, Doyle and Pollard for allegedly attacking

plaintiff on September 15, 2021; (2) Fourteenth Amendment claims for deliberate indifference to

a serious medical need against defendant Rowe for allegedly interfering with the provision of

medical care to plaintiff's hand and thumb in booking; (3) Fourteenth Amendment claim against

defendant Rowe for failing to intervene when defendant Branson allegedly recklessly pushed

plaintiff's wheelchair and slammed plaintiff down on August 16, 2021; (4) Fourteenth

Amendment condition of confinement claim against Branson, Young, and Rowe for allegedly

failing to bring cleaning supplies to Cell 15 resulting in plaintiff developing a rash; and (5) ADA

and Rehabilitation Act claims against Warden/Captain Nick Fisher in his official capacity based

on the alleged denial of a wheelchair and an accommodation for a medical diet.   28 U.S.C.

§§ 1915(e)(2)(B); 1915A(b).

2.    The Court **SEVER** and **DISMISS** plaintiff's remaining claims relating to his alleged

treatment at a hospital in Middletown, Ohio, **without prejudice** to plaintiff re-filing a separate

action or actions including such claims if he so wishes.  Fed. R. Civ. P. 20(a)(2); 21.  *See also*

*Harris v. Erdos*, No. 1:21-CV-104, 2022 WL 3053496, at *7 (S.D. Ohio Aug. 3, 2022).

3.    The Court certify pursuant to 28 U.S.C. § 1915(e)(2)(B) that for the foregoing

reasons an appeal of any Order adopting this Report and Recommendation would not be taken in

good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*.  *See McGore v.*

*Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

27

**IT IS THEREFORE ORDERED THAT:**

1.   Within thirty (30) days of receipt of this Order and Report and Recommendation, plaintiff is **ORDERED** to submit a service copy of the complaint and completed United States Marshal forms for each of defendants Claudill, Branson, Doyle, Pollard, Young, Rowe, and Warden/Captain Fisher.

2.   The Clerk of Court is **DIRECTED** to provide plaintiff with a copy of the complaint (Docs. 1-1; 1-2) and to return to plaintiff his incomplete United States Marshal forms for this purpose.   Upon receipt of service copies and completed United States Marshal forms, the Court **ORDERS** service of process by the United States Marshal in this case as directed by plaintiff.

**PROCEDURE ON OBJECTIONS:**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.    This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn*,

474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

March 10, 2023

KAREN L. LITKOVITZ
United States Magistrate Judge